IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TIFFANY GOLDSBY,

   Plaintiff,

  v.

SAFEWAY INC., dba SAFEWAY #1269,
a Delaware corporation,

   Defendant.

No. 3:16-cv-02056-HZ

OPINION & ORDER


Robert K. Meyer
2501 SW First Ave., Suite 230
Portland, OR 97201

  Attorney for Plaintiff

David G. Hosenpud
William E. Weiner
Lane Powell PC
601 SW Second Ave., Suite 2100
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Tiffany Goldsby brings this employment discrimination action against

Defendant Safeway, Inc. ("Safeway"). Before the Court are Defendant's motion for summary

judgment [22] and motion to strike portions of Plaintiff's evidence offered in response to

Defendants motion for summary judgment [38]. Plaintiff alleges ten causes of action under

Oregon state and federal law which can be grouped into four claims: (1) discrimination based on

race, gender, and sexual orientation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e

*et. seq.*, 42 U.S.C. § 1981, and Or. Rev. Stat. ("O.R.S.") § 659A.030; (2) hostile work

environment on the basis of her race, gender, and sexual orientation in violation of Title VII and

O.R.S. 659A.030; (3) retaliation under Title VII and O.R.S. 659A.030; and (4) retaliation and/or

interference with protected leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C.

§ 2601 *et. seq.*, and the Oregon Family Leave Act ("OFLA"), O.R.S. 659A.183. Defendant

moves for summary judgment on all of Plaintiff's claims. The Court rules as follows: summary

judgment as to (1) is DENIED; (2) is DENIED; (3) is GRANTED in part; and (4) is DENIED.

Additionally, Defendant's motion to strike is GRANTED in part.

## BACKGROUND

      Plaintiff is an African-American woman and a self-identified lesbian. Pl.'s Decl. ¶ 2, ECF

30. On August 24, 2006, Defendant hired Plaintiff to work on the night crew at Store #1269 in

Northeast Portland. *Id.* at ¶ 3. Four years later, Plaintiff internally transferred to work as a

produce clerk. *Id.* at ¶ 4; Compl. ¶ 11, ECF 1. On July 13, 2014, Lori Young became the Store Director at Store #1269. Young Decl. ¶ 3, ECF 23. In the first two months after Young's arrival, Plaintiff became responsible for managing the produce department. *Id.* at ¶ 4. During that same period, Young made multiple comments to Plaintiff concerning her race and sexual orientation. In August of 2014, after Young learned about Plaintiff's shoe collection, she said that "[i]t must be a black thing!" Pl.'s Decl. ¶ 8. In September of 2014, in response to Plaintiff telling Young that she did not want to be a produce manager, Young said "I thought dykes, gays were a lot stronger and can take on anything." *Id.* at ¶ 9. Also in September of 2014, when Plaintiff told Young that she would finish certain tasks before working on projects assigned by Young, Young called Plaintiff a "lazy black bitch." *Id.* at ¶ 10.

Other Safeway supervisors and employees also witnessed Young making discriminatory comments about Plaintiff. Plaintiff's supervisor Derek Grimm overheard Young complain that Plaintiff was a "typical black working the system." Meyer Decl. ¶ 3, Ex. 2 (Grimm Depo.) 55:9–56:2, 16–18, ECF 29. Grimm also observed that Young would discipline Plaintiff more than other employees for attendance issues. Grimm Depo. 65:23–66:13; 68:17–20. In addition, Joelle Pohan, Plaintiff's co-worker who had supervisory authority over Plaintiff, heard Young refer to Plaintiff as a "butch" and "butch dyke" and heard Young call Plaintiff a "butch dyke bitch." Pohan Decl. ¶ 8, ECF 31.

Plaintiff requested leave based on her medical condition in October of 2014. Pl.'s Decl. ¶ 13. Plaintiff's therapist faxed the leave paperwork to Young. *Id.* Young denied receiving the paperwork. *Id.* Plaintiff then put her paperwork on Young's desk in Pohan's presence and took a photograph of it. *Id.* at ¶ 14; Pohan Decl. ¶ 14. Plaintiff testified Young denied receiving that paperwork as well. Pl.'s Decl. ¶ 14. Pohan testified that she later observed Plaintiff's leave

paperwork in Young's trash bin. Pohan Decl. ¶ 14. When Pohan asked Young about the

paperwork, Young responded "Tiffany doesn't matter." *Id.* Young later told Plaintiff that she had

not received her leave paperwork; however, when Plaintiff informed Young of the photograph,

Young found the paperwork. Pl.'s Decl. ¶14. Plaintiff was granted leave from October 7 to

November 15, 2014. Young Decl. ¶ 8.

While on leave, Plaintiff and Young exchanged work-related text messages. *Id.* at ¶¶ 9,

12, Ex. 1; Pl.'s Decl. ¶ 16. In one of those messages, Young informed Plaintiff that she was

entitled to twenty-four hours of paid leave, not the thirty-two hours that she had requested.

Young Decl. ¶ 9. In another message, Young asked Plaintiff if she was going to extend her leave.

*Id.* at ¶ 12. Also while on leave, Plaintiff obtained two jobs with different employers and twice

reported Young's harassment to Defendant's human resources ("HR") department. Hosenpud

Decl. ¶¶ 4–5, 8, ECF 26; Pl.'s Decl. ¶¶ 11, 16.

When Plaintiff returned from leave on November 16, Young transferred her from the

produce department to the night crew. The parties provide competing explanations for the

transfer. Defendant contends that Plaintiff requested the transfer in order to accommodate her

two other jobs. Young Decl. ¶¶ 13–14. Plaintiff explains that Young offered the transfer to her

because Young needed Plaintiff on the night crew and could give her more hours. Pl.'s Decl.

¶ 18. In any event, Plaintiff was transferred and her schedule on night crew included fewer

working hours than her pre-leave position. Young Decl. ¶¶ 14–15; Pl.'s Decl. ¶ 20. Plaintiff

requested to be reinstated to her produce position but Young denied the request because the

position had been filled. Young Decl. ¶ 18; Pl.'s Decl. ¶ 20. On multiple occasions, both during

and after Plaintiff's leave, Plaintiff asked Young if she could be transferred to another store. Pl.'s

Decl. ¶¶ 17, 25. Young denied each of Plaintiff's requests, explaining that Safeway stores in the

region were undergoing a transfer freeze due a federal antitrust review of the company's merger with Albertsons. Kiddle Decl. ¶ 10, ECF 24; Young Decl. ¶¶ 16–17.

In December of 2014, Plaintiff reported to her union representative, Lucy Carrier, that she was not getting the hours she was entitled to and that Young was discriminating against her. Pl.'s Decl. ¶ 24; Yoo Decl. ¶ 4, ECF 25. Carrier relayed Plaintiff's complaints to Mona Yoo, Defendant's employee relations manager. Yoo Decl. ¶¶ 4, 6. Yoo, in turn, reported Plaintiff's discrimination complaint to Young on January 2, 2015. Young Supp. Decl. ¶ 5, Ex. 23, ECF 35. Three days later, on January 5, 2015, Young reported to Yoo that she was going to issue Plaintiff a written corrective action notice for attendance violations. Meyer Decl. ¶ 5, Ex. 4 (Yoo Depo.) 25:18–26:9. On January 20, 2015, Young issued Plaintiff a corrective action notice. Pl.'s Decl. ¶ 28, Ex. 3.

On January 30, 2015, Plaintiff requested medical leave due to severe stress, anxiety causing chest pains, and depression due to Young's harassment and discrimination. Pl.'s Decl. ¶ 30; Meyer Decl. ¶ 12, Ex. 12. Plaintiff was granted leave from January 28 through February 22, 2015. Kiddle Decl. ¶ 15.When Plaintiff returned from leave, her hours were increased to full-time. *Id.* In June of 2015, Store #1269 was closed and Plaintiff was transferred to another Safeway as a manager in the frozen department. Pl.'s Depo. 47:10–11.

On July 30, 2015, Plaintiff filed a complaint with the Bureau of Labor and Industries ("BOLI") alleging unlawful discrimination based on race and sexual orientation, retaliation, and interference with medical leave. Meyer Decl. ¶ 9, Ex. 8. BOLI issued a Notice of Substantial Evidence Determination on August 1, 2016. *Id.* Plaintiff filed this lawsuit on October 26, 2016.

//

//

**MOTION TO STRIKE**

Defendant separately filed a motion to strike portions of Plaintiff's evidence offered in response to Defendant's motion for summary judgment. *See* Mot. to Strike, ECF 38.[1] A district court can only consider admissible evidence when reviewing a motion for summary judgment. Fed. R. Civ. P. 56(e). "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56."). Furthermore, "hearsay evidence produced in an affidavit may be considered on summary judgment if the declarant could later present evidence through direct testimony." *Id.* (citing *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990)). At summary judgment, the threshold for personal knowledge is "particularly low" because "all 'justifiable inferences' must be drawn in favor of the nonmoving party." *Shultz v. Wells Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1066 (D. Or. 2013) (quoting *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013)).

Defendant moves to strike portions of Plaintiff's former coworker Robert Meyer's testimony and supporting exhibits, and portions of Plaintiff's and Alisa Pohan's declarations. *See* Mot. to Strike 2. In particular, Defendant moves to strike evidence from five sources: (1) Plaintiff's handwritten notes; (2) portions of Grimm's declaration; (3) BOLI's notice of

---

[1] Under Local Rule 56-1 and Rule 56 of the Federal Rules of Civil Procedure, a party may assert evidentiary objections in its response or reply memorandum rather than filing a separate motion to strike. *See* Fed. R. Civ. P. 56(c)(2) (2010 Advisory Committee Notes) ("There is no need to make a separate motion to strike.").

substantial evidence determination; (4) portions of Plaintiff's declaration; and (5) portions of Pohan's declaration.

The motion is denied with respect to Plaintiff's handwritten notes. Defendant contends that the notes are hearsay and lack foundation. Plaintiff's notes, however, are admissible as prior consistent statements used to rebut an express charge by Defendant that her declaration is inconsistent with her deposition. *See* Fed. R. Evid. 801(d)(1)(B)(i). In addition, the evidence may be admissible to show Plaintiff's then-existing state of mind and emotional condition which is relevant to the subjective component of her hostile work environment claim. *See* Fed. R. Evid. 803(3). Assuming the testimony in its current form is not admissible at trial, the Court may consider it on summary judgment because Plaintiff could later present the evidence through direct testimony. *Fraser*, 342 F.3d at 1036–37.

With respect to Grimm's testimony, the motion is granted in part to the extent of Plaintiff's concessions. Otherwise, the motion is denied. The Court's summary judgment determinations did not rely on the portions of Grimm's testimony to which Defendant objected. Similarly, the statements contained within BOLI's notice were cumulative with other testimony already before the Court. Accordingly, the Court did not rely on the contents of BOLI's notice in making any of its summary judgment determinations. Therefore, Defendant's motion to strike that evidence is denied as well.

Next, Defendant moves the Court to strike portions of Plaintiff's declaration. According to Defendant, testimony in Plaintiff's declaration should be stricken under the "sham affidavit" rule because it is inconsistent with her prior deposition testimony. "This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly

diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'"

*Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). In *Yeager*, the district court found that:

> [W]here the deponent remembers almost nothing about the events central to the case during his deposition, but suddenly recalls those events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed, the disparity between the affidavit and deposition is so extreme that the court must regard the differences between the two as contradictions.

*Yeager v. Bowlin*, No. CIV. 2:08-102 WBS JFM, 2010 WL 95242, at *5 (E.D. Cal. Jan. 6, 2010).

Plaintiff answered "I don't remember" or with words to that effect more than 380 times at her deposition. Hosenpud Supp. Decl. ¶ 14, Ex. 38, ECF 37. Plaintiff's declaration, by contrast, contains detailed testimony regarding events that Plaintiff testified she did not remember at her deposition. The Court finds that Plaintiff's testimony cannot be struck under the "sham affidavit" rule. The majority of the testimony to which Defendant objects is consistent with her prior statements in her handwritten notes and her BOLI complaint. Pl.'s Supp. Decl. ¶¶ 1–2, Exs. 1, 2, ECF 40. Plaintiff's notes were written contemporaneously with the events that they described and Plaintiff's BOLI charge was filed on July 30, 2015. *Id.* Plaintiff's deposition was taken approximately twenty-two months later on May 25, 2017. Hosenpud Supp. Decl. Ex. 38. Plaintiff's handwritten notes and BOLI complaint were introduced at her deposition and were used to refresh her recollection to create her declaration. Pl.'s Depo. 128:19–147:23; Pl.'s Supp. Decl. ¶¶ 2–3. Based on this timeline and the record, the Court finds that Plaintiff has provided a credible explanation for the disparity between her deposition testimony and declaration.

Defendant also objects to portions of Plaintiff's declaration on other grounds. The motion is granted as to ¶¶ 16, 30, and 31 of Plaintiff's declaration for the reasons Defendant identified.

The motion is denied as to ¶¶ 7 and 10 because that testimony was based on Plaintiff's personal knowledge and her interactions with Young. That testimony was also relevant to the subjective component of Plaintiff's hostile work environment claim.

Finally, Defendant moves to strike portions of Pohan's declaration. The motion is granted to the extent of Plaintiff's concessions. Additionally, ¶¶ 9, 12, 16, and 26 are stricken as hearsay and for the reasons that Defendant identified. The motion is otherwise denied because the testimony either non-hearsay, fell into an exception to hearsay, and was sufficiently based on Pohan's personal knowledge.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). The court draws inferences from the facts in the

light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

## DISCUSSION

Defendant moves for summary judgment on each of Plaintiff's four claims as outlined above. First, Defendant argues that Plaintiff's discrimination claim fails because Plaintiff cannot establish that Defendant's legitimate nondiscriminatory reasons for the alleged adverse employment actions were pretextual. Second, Defendant argues that Plaintiff cannot make out a prima facie case for her hostile work environment claim and that the claim is barred by the *Faragher/Ellerth* affirmative defense. Third, Defendant argues that Plaintiff cannot establish a prima facie case for her retaliation claim nor can she show that Defendant's non-retaliatory reasons for the alleged adverse employment actions were pretextual. Lastly, Defendant argues that Plaintif's FMLA/OFLA claims fail as a matter of law.

## I.       Discrimination

The parties dispute whether Plaintiff can show that Defendant's proffered reasons for the alleged adverse employment actions were mere pretext for unlawful discrimination. A prima facie case for discrimination claims can be established under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, the plaintiff must show that she: (1) belongs to a protected class: (2) was performing according to her employer's legitimate expectations; (3) has suffered an adverse employment action; and (4) "similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690–91 (9th Cir. 2017) (citing *Hawn*, 615 F.3d at 1156). Once the plaintiff has made out her prima facie case, "the burden shifts to the defendant to provide a

legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citing *Hawn*, 615 F.3d at 1155). "If the defendant meets this burden, then the plaintiff 'must then raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination.'" *Id.* (quoting *Hawn*, 615 F.3d at 1155).

Defendant does not dispute whether Plaintiff satisfied the elements of her prima facie case. Rather, according to Defendant, Plaintiff has failed to show that Defendant's non-discriminatory reasons for the adverse employment actions were pretext for discrimination. Pretext can be established "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), *as amended* (Aug. 11, 1998) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). A plaintiff "need produce very little evidence of discriminatory motive to raise a genuine issue of material fact." *Id.* (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991)). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* When the plaintiff offers indirect evidence, by contrast, "the plaintiff must produce 'specific, substantial evidence of pretext.'" *Id.* (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)).

The Court finds that Defendant has carried its burden under the second step of the *McDonnell Douglas* framework by producing legitimate non-discriminatory reasons for each alleged adverse employment action. First, Defendant explained that Young requested the transfer to the night crew and that her hours were reduced based on her limited availability, seniority, and the store's business needs. Young Decl. ¶ 15. Second, Defendant denied Plaintiff's transfer

request because of Safeway's region-wide transfer freeze. *Id.* at ¶¶ 16–17. Third, Defendant issued Plaintiff a written corrective action notice in January of 2015 due to her repeated attendance policy violations. *Id.* at ¶¶ 19–20.

When viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court concludes that Plaintiff has produced direct evidence of discriminatory motive sufficient to survive summary judgment. In other words, Plaintiff has created a triable issue as to whether Defendant's proffered reasons were pretextual. For example, Plaintiff testified that Young called her a "lazy black bitch." Pl's Depo. 45:13–46:1; Pl.'s Decl. ¶ 10. In addition, Plaintiff claims that after Young learned about Plaintiff's shoe collection she stated: "It must be a black thing!" Pl.'s Decl. ¶ 8. Grimm heard Young complain that Plaintiff was a "typical black working the system" and observed that Young would discipline Plaintiff more for attendance issues than other employees. Grimm Depo. 55:9–56:2, 16–18; 65:23–66:13; 68:17–20. Pohan heard Young call Plaintiff a "butch," "butch dyke," and "butch dyke bitch." Pohan Decl. ¶ 8.

In *Godwin*, the Ninth Circuit recognized that similar comments constituted direct evidence of discriminatory animus sufficient to create a triable issue as to pretext.

> As we said in *Lindahl*, it need be "very little." *Lindahl*, 930 F.2d at 1438 (direct evidence of sexual stereotyping where employer believed that the female candidates get "nervous" and "easily upset"); *see also Cordova*, 124 F.3d at 1150 (direct evidence of race discrimination where employer referred to a Mexican–American employee as a "dumb Mexican."); *Sischo–Nownejad*, 934 F.2d at 1111 (direct evidence of sex stereotyping where employee referred to female plaintiff as "an old warhorse" and to her students as "little old ladies").

[150 F.3d at 1221–22](). The record in this case contains direct evidence of discriminatory animus towards African-Americans and lesbians. Accordingly, Plaintiff's has sufficiently shown pretext and Defendant's motion for summary judgment on her discrimination claim is denied.

## II. Hostile Work Environment

Next, Defendant moves for summary judgment on Plaintiff's hostile work environment claim on two grounds. First, Defendant argues that Plaintiff cannot show that Defendant's conduct was sufficiently severe or pervasive to alter the conditions of her employment. Second, Defendant contends that the *Faragher/Ellerth* affirmative defense bars this claim.

Hostile work environment claims require that the plaintiff show that her "workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Courts look at the totality of the circumstances when considering hostile work environment claims. Those circumstances include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris*, 510 U.S. at 23). It is well established that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788 (internal citations and quotation marks omitted).

Defendant argues that Plaintiff's hostile work environment claim is based on only three isolated comments that Young made to Plaintiff, including: "It must be a black thing"; "I thought dykes, gays were a lot stronger and can take on anything"; and "lazy black bitch." Pl.'s Decl. ¶¶ 8–10. By contrast, Plaintiff relies on comments Young made outside of her presence to Grimm and Pohan to support her claim. The harassing comments need not be directed at Plaintiff in order to create a hostile work environment. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998). Neither party raises the issue of whether Plaintiff was aware of Young's comments made outside of her presence. However, it would be reasonable to infer from the declarations and deposition testimony of Plaintiff, Grimm, and Pohan that Plaintiff was aware of Young's comments. Accordingly, it is proper for the Court to consider Young's comments made outside of Plaintiff's presence as acts contributing to a hostile work environment.

The evidence, when viewed in its entirety and in the light most favorable to Plaintiff, is sufficient to support her hostile work environment claim. In addition to the three comments that Defendant identified, Pohan testified that Young also made derogatory comments about Plaintiff such as "butch dyke bitch" and complained about Plaintiff "countless times, referring to her as 'lazy' or a 'lazy bitch' or 'crazy bitch.'" Pohan Decl. ¶¶ 8, 15. Grimm also testified that over a period of six months he observed Young showing a "special dislike" for Plaintiff. Meyer Decl. Ex. 2, (Grimm Decl.) ¶ 6. For example, Young referred to Plaintiff as "bitch", "worthless" and as being a "typical lazy black, working the system." Grimm Decl. ¶ 6. Under the totality of the circumstances, a reasonable factfinder could conclude that someone of Plaintiff's protected classes would find such conduct objectively abusive.

Defendant also argues that the *Faragher/Ellerth* affirmative defense shields it from liability. Under this defense an employer may avoid liability where it can show that it exercised reasonable care to prevent or correct the harassing behavior and that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer. *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745 (1998). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 745. "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

> Under *Faragher/Ellerth*, when an employee has been subjected to an unlawful "tangible employment action" by a supervisor, the employer may be held liable without more; when the employee has been unlawfully harassed, but there has been no "tangible employment action," the employer may avoid liability by proving the defense of "reasonable care."

*Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. "A tangible employment action in most cases inflicts direct economic harm." *Id.* at 762.

Defendant contends that: (1) it took no tangible employment action against Plaintiff; (2) it exercised reasonable care to prevent and/or correct harassment; and (3) Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities.

In this case, Young was Plaintiff's supervisor and the parties dispute whether Young's harassment culminated in a tangible employment action. Specifically, the parties disagree about

whether Plaintiff's transfer to the night crew involved "significantly different responsibilities" or a "significant change in benefits." *Id.* at 761. Plaintiff contends that her hours were significantly reduced. Defendant, by contrast, maintains that the reduction in hours was offset by Plaintiff's other employment. After Plaintiff's other employment ended, however, Young continued to assign Plaintiff less hours than before her medical leave. Pl.'s Decl. ¶ 20, Ex. 2. The parties have produced competing narratives explaining why Plaintiff's hours on the night crew were reduced. When viewing this record in the light most favorable to Plaintiff, the Court concludes that the parties have created a genuine factual dispute regarding whether Plaintiff suffered an adverse employment action. Accordingly, Defendant has not demonstrated that it is entitled to summary judgment on Plaintiff's hostile work environment claim based on the *Faragher/Ellerth* affirmative defense.

## III.    Retaliation

Plaintiff claims that Defendant retaliated against her for engaging in protected activity, including two reports she made to Defendant's HR department in October and/or November of 2014 and for a report Plaintiff also made to her union representative in December of 2014. As discussed above, Plaintiff argues that Defendant took three adverse employment actions against her. First, Young transferred Plaintiff to night crew and reduced her hours. Second, Young refused Plaintiff's request to transfer to another store. Third, Young issued an unwarranted written corrective action to Plaintiff for attendance issues. Defendant argues that each of Plaintiff's purported adverse employment actions fail to support her claim. Defendant contends that Young was unaware of Plaintiff's complaints when she transferred Plaintiff to the night crew and refused Plaintiff's request to transfer to another store. Additionally, Defendant argues that

Plaintiff cannot show that Defendant's non-retaliatory reasons for taking the adverse employment actions were pretexual.

To make out a prima facie case for retaliation, a plaintiff must show that: (1) she was involved in a protected activity; (2) her employer took an adverse employment action; and (3) a causal relationship between the two. *See Brooks*, 229 F.3d at 928. Defendant does not dispute the first two elements of Plaintiff's prima facie case. Rather, Defendant claims that Plaintiff cannot show a causal link between her protected activities and the adverse employment actions.

There is nothing in the record showing that Young was aware of Plaintiff's complaints when she decided to transfer Plaintiff to the night crew. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("[T]he plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."). Young transferred Plaintiff to night crew and adjusted her hours in November of 2014. Young Decl. ¶ 13. Young first learned of Plaintiff's complaint from Yoo on January 2, 2015. Young Supp. Decl. ¶ 5, Ex. 23. Therefore, Plaintiff has not made the required showing that Young—the decision-maker responsible for the adverse employment action—knew of Plaintiff's protected activity when she took the adverse employment action.

Plaintiff's second adverse employment action fails for the same reason. Plaintiff claims that Young denied her request to transfer to another store in December of 2014. As stated above, however, Young did not learn of Plaintiff's complaints to HR and her union representative until January of 2015. Here too, Plaintiff cannot show the requisite causation between her protected

activity and the adverse employment action. Accordingly, summary judgment is granted on

Plaintiff's retaliation claim to the extent that it is based on Young's decisions to transfer Plaintiff

to the night crew with an adjusted schedule and to deny Plaintiff's request for a transfer.

Lastly, Defendant argues that Plaintiff cannot show that Defendant's reasons for issuing

her a written corrective action notice were pretext for retaliation. Unlike Plaintiff's two other

adverse employment actions, Young was aware of Plaintiff's complaints when she issued the

notice. Plaintiff argues that the close temporal proximity between Plaintiff's complaints and the

corrective action notice is sufficient evidence of pretext.

Once a Plaintiff has shown the three elements of a prima facie case for retaliation:

> [T]he burden of production shifts to the employer to present
> legitimate reasons for the adverse employment action. Once the
> employer carries this burden, plaintiff must demonstrate a genuine
> issue of material fact as to whether the reason advanced by the
> employer was a pretext. Only then does the case proceed beyond
> the summary judgment stage.

*Brooks*, 229 F.3d at 928 (internal citation omitted).

In this case, Defendant has carried its burden of showing that it had legitimate

nondiscriminatory reasons for issuing Plaintiff the corrective action notice. According to

Defendant, Plaintiff's poor attendance record supports Young's decision. Young and Assistant

Store Manager Alicia Biver issued Plaintiff the corrective action notice on January 20, 2015.

Young Decl. ¶19. Between December 29, 2014, and January 19, 2015, Plaintiff was absent from

work for approximately thirty-six scheduled hours. Young Decl. ¶19, Ex. 4; Biver Decl. ¶ 5, ECF

27. During Plaintiff's thirteen scheduled shifts in that time period, she left early seven times and

was absent three other times. *Id.* Neither Young nor Biver were informed that Plaintiff had any

excuse for leaving early from her shifts. *Id.* The remaining question is whether Plaintiff can show

that Defendant's legitimate nondiscriminatory reason for issuing her the written corrective action was pretextual.

The pretext analysis for retaliation claims is the same as it is for discrimination claims as discussed above. *See supra* Part I. A plaintiff may show pretext "by 'directly persuading the court that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004) (quoting *Burdine*, 450 U.S. at 256). The Ninth Circuit has "listed three ways in which a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions."

> First, a plaintiff can introduce evidence regarding the proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury logically could infer [that the plaintiff] was terminated in retaliation for his speech. Second, a plaintiff can introduce evidence that his employer expressed opposition to his speech, either to him or to others. Third, the plaintiff can introduce evidence that is employer's proffered explanations for the adverse employment action were false and pre-textual.

*Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (internal citations and quotation marks omitted).

Unlike Plaintiff's discrimination claim, Plaintiff has produced no direct evidence showing that Young had a retaliatory motive for issuing her a written corrective action. The record contains no statements from Young expressing opposition to Plaintiff's complaints. Plaintiff makes two arguments regarding pretext. First, Plaintiff argues that Defendant's explanation is contradicted by the record and is therefore false. Second, Plaintiff argues that the close temporal proximity between when Young learned of Plaintiff's complaints and when Young issue the written corrective action notice shows pretext.

Plaintiff contends that evidence in the record contradicts Defendant's preferred justification for issuing her the corrective action notice. For example, Pohan testified Young cited an incident in which Pohan allowed Plaintiff to leave work early in January 2015 because Plaintiff reported that she was having chest pain and needed to go to the emergency room. Pohan Decl. ¶ 23. In addition, Young cited incidents in December of 2014 in which Plaintiff was one minute late, two minutes late, and four minutes late. *See* Meyer Decl. ¶ 10, Exs. 9 & 10. On several of the days that Plaintiff arrived late, she also left approximately twenty-five minutes early. *Id.* Grimm explained that PICs were permitted to allow an employee to leave early who had completed their work for the day. Grimm Decl. at ¶12. In response, Defendant produced evidence showing that it issued corrective action notices to other employees during the same period for similar or lesser attendance policy violations. Young Decl. ¶ 20; Young Supp. Decl. ¶ 7; Kiddle Decl. ¶14, Ex. 12. Despite Plaintiff's arguments, Defendant has produced undisputed evidence that Plaintiff was aware of Safeway's attendance policy and repeatedly violated it. While Plaintiff provides some explanations for her attendance record, she has not produced evidence showing that Defendant's reasons for the adverse employment action were false.

Next, Plaintiff argues that Young's retaliatory motivation can be shown indirectly through the close temporal relationship between when Young learned of Plaintiff's complaints and when she issued the written corrective action. The standard for raising a triable issue as to motivation is "relatively low." *Stegall*, 350 F.3d at 1072

> [I]n evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facie case. When that evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of

material fact will ordinarily preclude the granting of summary judgment.

*Id.* at 1072 (quoting *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991) (citations omitted)). The motivation element of a retaliation claim "require[s] very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by a factfinder, upon a full record." *Id.* (quoting *Sischo-Nownejad*, 934 F.2d at 1111). The Ninth Circuit has explained that an employer's true motive in an employment decision is difficult to ascertain and "such an inquiry should be left to the trier of fact[.]" *Id.* at 1072.

Young first learned of Plaintiff's complaints on January 2, 2015. Young Supp. Decl. ¶ 5, Ex. 23. On January 5, 2015, Young wrote to Yoo that she intended to issue a corrective action notice to Plaintiff for attendance violations. Yoo Depo. 25:18–26:9. On January 20, 2015, less than three weeks later, Young issued Plaintiff the written corrective action notice. Meyer Decl. Ex. 5 (Young Depo.) 121:5–8. Such a close temporal relationship between these events is sufficient for a factfinder to logically infer that Young issued the corrective action notice because of Plaintiff's complaints. The Ninth Circuit has recognized that significantly longer periods of time are sufficient to infer retaliation. *See, e.g., Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 929 (9th Cir. 2004) (citing *Coszalter*, 320 F.3d at 977) (recognizing that a three-to-eight month range "'easily' supports an inference of retaliation"). Because a reasonable factfinder could infer that Defendant's nondiscriminatory reasons for the adverse employment action were pretextual, Defendant's motion to dismiss Plaintiff's retaliation claim is denied.

## IV. FMLA/OFLA

Lastly, Defendant moves for summary judgment on Plaintiff's "medical leave interference, discrimination or retaliation" claims brought under the FMLA and OFLA. *See*

Compl. ¶¶ 86–102. Claims brought under the FMLA and OFLA are subject to the same legal standards. *Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir. 2011). The FMLA and OFLA "create[] two interrelated substantive rights for employees." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). First, an employee has the right to take leave for reasons described in the statutes. *Id.* Second, an employee who takes such leave "has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave." *Id.* (internal citations omitted).

It is unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided" by the FMLA/OFLA. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. § 2615(a)(1)). The Ninth Circuit has recognized two theories for recovery under 29 U.S.C. § 2615, "the retaliation or discrimination theory and the entitlement or interference theory." *Sanders*, 657 F.3d at 777 (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)). "While the FMLA does not clearly delineate these two claims with the labels 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act." *Id.* (quoting *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206 n. 9 (11th Cir. 2001)).

To make out an interference claim, a plaintiff must show that taking the protected leave was a "negative factor" in the employer's employment actions. *Bachelder*, 259 F.3d at 1122. (citing 29 C.F.R. § 825.220(c)). Interferences includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Xin Liu*, 347 F.3d at 1133 (quoting 29 C.F.R. § 825.220(b)). A plaintiff can prove an interference claim "by using either direct or circumstantial evidence or both." *Sanders*, 657 F.3d at 778 (quoting *Bachelder*, 259 F.3d at

1125). Evidence that an employer failed to reinstate an employee after leave to "her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Id.* (citing 29 C.F.R. §825.220(b)). The Ninth Circuit does not apply the *McDonnell Douglas* burden-shifting framework to interference claims. *Id.* If an employer "seeks to establish that he has a legitimate reason to deny an employee reinstatement, the burden of proof on that issue rests with the employer." *Id.* at 781.

Plaintiff has produced evidence showing that Defendant interfered with her protected leave sufficient to survive summary judgment. Specifically, Plaintiff produced circumstantial evidence from which one could infer that Young interfered with Plaintiff's leave by deliberately misplacing or throwing away her leave paperwork. *See* Pl.'s Decl. ¶¶ 13–14; Pohan Decl. ¶ 14. For example, Pohan observed Plaintiff's leave paperwork in Young's trash bin and when Pohan confronted her about it, Young stated that Plaintiff "doesn't matter." Pohan Decl. ¶ 14. Young also texted Plaintiff at least three times while Plaintiff was on protected leave. Young Decl. ¶¶ 9, 12, Ex. 1. In one of those messages, Young informed Plaintiff that she was entitled less hours of leave than she requested. *Id.* at ¶ 9. In another message, Young asked Plaintiff is she was going to ask to extend her leave. *Id.* at ¶ 12.

In addition, when Plaintiff returned from her leave she was not reinstated to an equivalent position. *Sanders*, 657 F.3d at 778 (citing 29 C.F.R. § 825.220(b) (recognizing that "any violation of the FMLA constitutes interference with rights under the FMLA"). Upon Plaintiff's return, she was transferred from the produce department to the night crew and her hours were reduced. The Court concludes that based on this evidence, Plaintiff has created a triable issue as to whether Defendant interfered with her protected leave. Therefore, summary judgment on this issue is denied.

As for Plaintiff's FMLA/OFLA retaliation claim, such claims are reviewed at the summary-judgment stage under the *McDonnell Douglas* burden-shifting framework described above. *See supra* Part III. Once more, Plaintiff must prove that: (1) she engaged in a protected activity; (2) Defendant took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse action. If Plaintiff establishes her prima facie case, then the burden shifts to Defendant to show a legitimate, non-retaliatory reasons for the adverse employment actions. If Defendant produces such reasons, then the burden shifts back to Plaintiff to show that the reasons were pretext for retaliation.

Plaintiff has clearly established her prima facie case of retaliation. The parties do not dispute that Plaintiff took her protected leave and that Defendant took adverse employment actions against her. The causal connection is established by the temporal proximity between Plaintiff's leave and Defendant's decisions to transfer her to night shift, deny her transfer to another store, and issue her a written corrective action notice. Plaintiff took her leave from October 7 to November 15, 2014. Young Decl. ¶ 8. Young transferred Plaintiff to the night crew with reduced hours immediately upon her return. *Id.* at ¶ 13. In October and December of 2014 Young refused Plaintiff's requests to transfer to another store, based in part, on Safeway's policy prohibiting transfers while on medical leave. Kiddle Decl. ¶ 9. Lastly, Defendant issued Plaintiff a written corrective action notice for attendance violations on January 20, 2015, less than three months after Plaintiff returned from leave. As discussed above, such a close temporal proximity between the protected activity and the adverse employment actions is sufficient to create an inference of retaliation. Accordingly, Defendant's motion for summary judgment on Plaintiff's FMLA/OFLA retaliation claim is denied.

//

## CONCLUSION

Defendant's motion to strike [38] is GRANTED in part. Defendant's motion for summary judgment [22] is: DENIED as to Plaintiff's discrimination claim; DENIED as to Plaintiff's hostile work environment claim; GRANTED in part as to Plaintiff's retaliation claim; and DENIED as to Plaintiff's FMLA/OFLA claims.

Dated this ____ day of _____, 2017.

MARCO A. HERNÁNDEZ
United States District Judge